UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

SAHAR ALSHALANI, **Docket No.:**

Plaintiff,

-against-

THE PRESBYTERIAN CHURCH, USA, a Corporation,
RICK UFFORD-CHASE,
And KITTY UFFORD-CHASE,

**COMPLAINT**

Defendants.
---------------------------------------------------------------------X

Plaintiff, Sahar Alshalani, by and through her attorneys, the Morrison Law Firm, P.C., as and for her Complaint, against Defendants the Presbyterian Church, USA, a Corporation, Rick Ufford-Chase, and Kitty Ufford-Chase alleges the following:

**Preliminary Statement**

**1.** United States Supreme Court Justice Antonin Scalia said in a speech, "It takes courage not to be politically correct. If you're a coward, it's your fault." Within her employment setting with the Defendant, the Presbyterian Church, USA, a Corporation ("PCUSA"), its leadership endorsed the current politically correct anti-white supremacy movement which in turn fostered an atmosphere of extreme and severe gender, racial, national origin and religious hostility targeted at Plaintiff, among others. Out of some attempt at misguided do-good spirit, PCUSA allowed its workplace to fill with malice where Plaintiff was only viewed through the lens of her race, national origin, the color of her skin and her religion. In bending over backwards in the name of political correctness, PCUSA went to the extreme of creating a workplace permeated with hostility to Plaintiff's gender, race, skin color and ethnicity, in clear contravention of Title VII and New York State Human Rights Laws.

## THE PARTIES

**2.** Plaintiff is a female, devout, light skinned, Arab-American, Shia-Muslim of Iraqi descent. Because of her race and national origin, she identifies as a person of color. Plaintiff resides in the State of New York, in the County of Rockland. Plaintiff was formerly known as Sahar Darwish.

**3.** Defendant, The Presbyterian Church USA, a Corporation ("PCUSA"), is a Pennsylvania not-for-profit Corporation, with its principal place of business in Louisville, Kentucky. It owns and operates the Stony Point Center in Rockland County at which it employed Plaintiff.

**4.** Upon information and belief, the Defendant Rick Ufford-Chase is a resident of the County of Orleans, Vermont. At all times relevant to the instant action, Rick Ufford-Chase was the Co-Executive Director of the Stony Point Center owned and operated by Defendant PCUSA in Rockland County, New York. He was an employee and agent of PCUSA. He is sued herein in his individual capacity under New York State Human Rights Law for aiding and abetting PCUSA's and David Ragland's harassment of Plaintiff, directly harassing Plaintiff and retaliating against Plaintiff for her engagement in protected activities. On behalf of Defendant PCUSA, Defendant Rick Ufford-Chase had the power and authority to hire and fire employees of PCUSA at the Stony Point Center, set schedules and determine rates of compensation

**5.** Upon information and belief, the Defendant Kitty Ufford-Chase is a resident of the County of Orleans, Vermont. At all times relevant to the instant action, Kitty Ufford-Chase was the Co-Executive Director of the Stony Point Center owned and operated by Defendant PCUSA in Rockland County, New York. She was an employee and agent of PCUSA. She is

sued herein in his individual capacity under New York State Human Rights Law for aiding and abetting PCUSA and David Ragland's harassment of Plaintiff and retaliating against Plaintiff for her engagement in protected activities. On behalf of Defendant PCUSA, Defendant Kitty Ufford-Chase had the power and authority to hire and fire employees of PCUSA at the Stony Point Center, set schedules and determine rates of compensation.

**Jurisdiction and Venue**

**6.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this matter involves questions of federal law. This Court has jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

**7.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the acts complained of herein occurred in this jurisdiction in Rockland County.

**8.** Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunities Commission ("EEOC") on or about March 7, 2020 alleging violations of her rights under 42 U.S.C. Section 2000-e et seq. On or about November 13, 2020, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has complied with the statutory conditions precedents for instituting an action against PCUSA pursuant to 42 U.S.C. §2000-e.

**Facts Common to All Causes of Action**

**9.** Plaintiff was a paid volunteer for PCUSA at its multi-faith Conference and Retreat Center (the "Center") in Stony Point, New York (Rockland County). In addition to a $75 a week stipend that she was paid, PCUSA provided her with the substantial financial benefits of a first-floor basement apartment with amenities, all meals, access to a vehicle, and health insurance. Plaintiff was not hired in a capacity to advance the religious doctrine of PCUSA, her

position did not require her to be a member of the Presbyterian faith, in fact, quite the contrary. She began her employment with PCUSA in 2012.

**10.** Her duties and responsibilities varied but were primarily split into two categories: Managing the Center's Fair-Trade Gift Shop and Providing Outreach/Networking. She would also assist with various duties with regards to the hospitality of our guests, among other things, such as greeting guests at meals, providing transportation to guests, helping out as needed in the kitchen or with housekeeping, and providing tours of the Center. As part of this multifaith community, she provided a presence to and through it and PCUSA to the religious movement for justice and national media on issues of faith and tolerance by, among other things, appearances on the Today Show and MSNBC's Talk Show "Just Faith". She spoke on several U.N. Panels during Interfaith Harmony Week discussing PCUSA's mission. She represented the PCUSA in Ferguson, Missouri, at Standing Rock, North Dakota, and at the U.S.-Mexican border related to the detainment of migrant children. She participated on several panels at the Parliament of World Religions, several National Poor People's Campaign Moral Revival Events, at interfaith prayer vigils for the high school shooting victims in Parkland, Florida, at vigils in Pittsburgh related to anti-Semitic murders there, and marched alongside other national faith leaders in Charlottesville, Virginia, while white supremacist rallies were being held there. In her presentations, she would acknowledge, thank and discuss PCUSA and the Center. Her travel to and participation at these events was arranged and coordinated through the Center. As such, PCUSA directed and controlled Plaintiff's employment with it.

**11.** In October 2018, the Center began the employment of David Ragland, PhD., a dark-skinned, U.S.-born, African American male, Sunni-Muslim. Similarly, he was involved in PCUSA's inter-faith mission. Over the year that they worked together, Dr. Ragland engaged in

persistent and severe and pervasive pattern of harassing Plaintiff because of her gender, race, national origin, religion and the color of her skin. Ragland cursed at, yelled at, shamed, accosted and terrorized her and he publicly intimidated and bullied her. He made remarks directed at the color of her skin, her national origin, her religious denomination and gender.

**12.** For example, he derogatorily called her "a white girl who passes as a person of color", and publicly referred to her as a "Suzy-Q" (a racially and sexually harassing term of derision in the Muslim world: a lighter skin Muslim female who does not wear a hijab (religious head scarf) full time; an intellectually incompetent woman who uses her sexuality to manipulate and get ahead professionally, and one who only wears her hijab when it is convenient or strategic) and called her racial slurs such as a "Cracker" (a racist, uneducated white person). Ragland's "Suzy-Q" remark was said at a community meeting attended by the Co-Executive Directors of the Center, Defendants Rick and Kitty Ufford-Chase. In her workplace, in front of its Executive Directors, Ragland was permitted to call Plaintiff an epithet questioning the truthfulness and the purity of her faith and religious beliefs.

**13.** Upon the arrival of Ragland, the focus of the PCUSA's Stony Point Conference Center changed from being "a multifaith, residential, intentional community of Muslims, Jews, and Christians, dedicated to the study and practice of hospitality, nonviolence, peace, justice and earthcare." into becoming focused on "Anti-White Supremacy". Ragland instilled a fourth cohort, a "Black Caucus," within the Stony Point Center and partnered with Defendant Rick Ufford-Chase, one of the Center's Co-Executive Directors, and the Networking and Outerteam. In addition to being the Center's Co-Executive Director, Rick Ufford-Chase served two terms as a Moderator of PCUSA's national administration. Within weeks of Ragland's arrival, much of

the Center's existing programing resources for multifaith engagement for peace and justice work began to be re-routed towards that of Ragland's work of "national reparations for slavery."

**14.** Rick Ufford-Chase began holding "White Privilege Meetings", "White People's Conversations" and discussion groups at his home located on the Center's campus. He began actively recruiting for this group and invited the staff and community members via a mass email requesting: "those of you who identify as white (some of us with significant mixed identities as well) can explore our own question of whiteness, explore systems of white privilege, how we participate in structures of racism, and white fragility." In another email entitled "Report back from White Folks", it was stated that "(meetings are) for purposes of accountability to the nonwhite folks in the community" and all "non-black" folks were instructed to read the book "White Fragility". When Plaintiff was accosted about missing the meetings, she, along with many others on campus (Latino, Jewish, darker Arabs, Korean, part Indigenous) reminded leadership that they did not consider themselves "white". In response, she was told that because she had "light skin", had "no accent", and was "educated", that the Black Caucus at Stony Point Center, and "people in general would automatically consider her to be white and not an Arab-American." Shocked, humiliated, and patronized, she was singled out and shamed due to her skin color and ethnicity.

**15.** Upon arriving at the Center, Ragland decided that he preferred the house that Plaintiff was living in as opposed to the housing he was assigned. He told many at the Center that he "had a plan" to obtain the residence that she was then living in. One early morning, while Plaintiff was still asleep, Ragland and his partner, Danielle, obtained the master key from the front desk, entered her home while she was still asleep, startled her, and began inspecting the house she was living in for space, square footage etc. Still in her night gown, and in her bed,

Plaintiff asked about their motives. Their answer, "we are scoping out potential residences". Ragland then lobbied the Center's Housing Committee for that particular housing space for several months. Plaintiff was ultimately relocated to the basement apartment a half mile further down the road from the Center. It was the same space that David and his family had formerly resided in, and that Ragland had publicly cited as "unacceptable". Ragland claimed, to many, that the "Presbyterian Church was racist for putting a Black man in a damn basement", and that "the white folks should have to live in those conditions." The Center later remodeled a different, larger, three-bedroom home on campus for him. The newly remolded home became recognized as a "People of Color House", the only house dedicated to a cohort on the PCUSA property.

**16.** Through the Outerteam, Ragland repeatedly and routinely denied Plaintiff the opportunity to travel to fulfill her covenential duties. In denying her requests, he expressed in an email "all I see is a white woman getting approved and a black woman being denied." This jurisdiction of funds and other paralyzing efforts began crippling Plaintiff's assigned interfaith work as funds were transferred for projects of other, darker people of color, solely on the basis of the color of their skin. It was a consistent effort to gaslight Plaintiff's credibility due to her complexion and to stifle her opportunities in the outside arena. Rick Ufford-Chase, Ragland and Outerteam promoted the profiles of people of color by exploiting the resources of PCUSA. Ragland and Rick Ufford-Chase, through the Outerteam, began to route PCUSA money to projects for darker skinned community members who worked exclusively at PCUSA's Toddler's Underground Revolutionary Freedom Fighter's Day Care Center, or for those who were not in the Stony Point Center staff at all, including spouses of community members, and neighborhood activists. Plaintiff was shamed, humiliated, questioned, belittled by constantly having her

requests and receipts scrutinized by the Outerteam, Black cohort members stated that she was being given special privileges because she and others were "white women".

**17.** Ragland's harassment of her has been witnessed and documented by many at the Center, including Defendants Kitty and Rick Ufford-Chase, its Co-Executive Directors. Despite numerous verbal and documented complaints from her to the Ufford-Chases, and to the resident Chaplain, Rabia Terri-Harris, throughout the past year, PCUSA took no action to stop this discrimination and harassment, a condonement of it. When Plaintiff and others questioned the silence on calling out the behavior, they were reminded that the Center was now only accepting applications for "Black Jews", "Jews of Color", "Black Muslims", or "Muslims of Color". Plaintiff was told this on several occasions in public and in private. Plaintiff, and, upon information and belief, others, have heard several times, from different people within the Center's administration, including but not limited to the Ufford-Chases, "David is black, he is Muslim, he is male, he is articulate" or "We need to fill the people of color (specifically black) demographics", or, "Even if they are not the best most grounded in their faith, or perfect, we shouldn't refuse anyone, especially if they are black". As to recruiting black cohort members or employees without success, a colleague was told, "We just need warm bodies." Plaintiff heard an admissions team member viciously defend David's minimal hours of service at the Center then yell at an elderly Jewish worker to adhere to using a timecard: "It's not anyone's damn business if David used a time card or not!" It had even come a point that when a job applicant or community member applicant needed to do an interview from a distant locale, management would decline a phone interview and insist on doing a skype interview. Upon information and belief, this was done in order to visually guarantee that the applicant was a "person of color."

**18.** In private sessions with the Center's Chaplain, Rabia Terri Harris, Plaintiff further complained of Ragland's bullying to her numerous times. Plaintiff told Terri Harris that Plaintiff was self-harming, having lapsed into episodes of bulimia nervosa, due to management's silence regarding the reporting of Ragland's violence on campus to herself and others. Terri Harris responded with indifference.

**19.** On at least approximately five different occasions, Plaintiff asked Defendants Rick and Kitty Ufford-Chase to contact Human Resource to fill out incident reports regarding Ragland's abuse, and requested neutral, third party mediation. The only option given to Plaintiff by Rick Ufford-Chase, on behalf of the PCUSA, was to participate in an Anti-White Supremacist "Unpacking Space Tool Kit". This option consisted of having the darker skinned party, or the "oppressed" party, and a lighter skinned party, considered automatically the "oppressor", gather in a public room, for a publicized, open event. Plaintiff declined this offer as it was clearly inadequate and inappropriate to respond to harassment and discrimination. Plaintiff renewed her request for some neutral third-party mediator.

**20.** On or about September 19, 2019, Plaintiff directly contacted PCUSA's Human Resources Department (Ruth Gardner) in Louisville, Kentucky, to make a complaint about Ragland and the harassment at the Center, and the condonement of it by the Ufford-Chases. Ms. Gardner told her that she and members of the legal team would be visiting the Center for a PMA Board visit the following week and Plaintiff's complaints would be investigated and raised with the Ufford-Chases. Out of fear of retaliation, she requested to remain anonymous, as she was afraid of retaliation from Rick and Kitty Ufford-Chase with regards to her position in the community. Ms. Gardner assured Plaintiff of the confidentiality of the call. However, Plaintiff was later told that PCUSA headquarters confirmed to Rick Ufford-Chase that a complaint call

was made. Enough identifying information about Ragland's harassment was provided so that Plaintiff was easily identifiable as the complainant. Plaintiff also contacted PCUSA's Corporate offices in 2019 several times detailing the events of the harassment, including contacting its General Counsel. Upon information and belief, others also contacted PCUSA's Corporate offices and made similar complaints about Ragland and Rick and Kitty Ufford-Chase. PCUSA ignored these contacts, and, upon information and belief, took no action nor investigated them in response.

**21.** Notably, on September 25, 2019, the day of the inspection visits, Ms. Ufford-Chase was scheduled to meet with Plaintiff and renew her employment agreement as had been orally agreed. However, after the Ufford-Chases became aware of her protected activities, the meeting to renew Plaintiff's employment was cancelled via text to her from Ms. Ufford-Chase.

**22.** On Sept 30, 2019, the Ufford-Chases by email to Plaintiff, notified her that they had instructed that the gift shop be closed for several weeks while they took a family vacation to Spain. In the same email, Plaintiff was suspended from her job duties. She was humiliated as she was publicly banned from the gift shop, and the locks to the shop were changed in front of guests, staff, and volunteers at a particularly busy time of day.

**23.** Plaintiff suffered extreme anxiety over her future employment, housing, health insurance and community standing, causing her to delay her physical therapy and other healthcare. She was particularly concerned about the Ufford-Chase's reference to "further questioning" in their e-mail to her prior to their decision not to re-sign her employment agreement which aggravated Plaintiff's depression, back pain, and eating disorder.

**24.** On October 14, 2019 four other Stony Point Center employees and members of the Muslim cohort, Amirah AbuLoghod, Susan Smith, Ismael Assad, Farah Al-Jayyousi, and

Plaintiff, met with Chaplain Rabia Terri Harris and pleaded with her to have an intervention with David Ragland, and Rick and Kitty Ufford-Chase to address Ragland's hostility. Rick and Kitty were notified of this Muslim cohort meeting, the contents of the discussion, and the demand for a meeting with David Ragland regarding his hostility at the Center. Rabia, a member of the Center's Admissions Team Committee, reminded Plaintiff and her colleagues of the difficulty of recruiting Black Muslims, especially male black Muslims. PCUSA staff member Chaplain Rabia, failed to schedule a meeting to address Ragland's hostility.

**25.** Several days after this meeting and approximately a month after Plaintiff's call to HR, Rick and Kitty Ufford-Chase presented her with only the option of a transitional covenant and Plaintiff was summarily terminated, effective October 18, 2019. David Ragland's covenant with PCUSA expired a few weeks later, and was renewed by Rick and Kitty Ufford-Chase and the PCUSA.

**26.** Plaintiff is aware also of anti-Semitic, anti-Catholic, anti-Latino attacks, the denial of handicap accessibility, harassment of and hostility towards developmentally disabled government workers, severe bullying towards the elderly, and the preferential treatment and easy access and availability of PCUSA resources to the Black Caucus and to the younger, white, healthy protestants at the Center. In permitting Ragland's harassment of her of which the Ufford-Chases witnessed and, of which she complained to them about, the Ufford-Chases and PCUSA condoned and created a hostile work environment. Rick Ufford-Chase recently acknowledged his awareness and contribution to this hostile environment at a January 2020 Unpacking Forum, notes of which were transcribed, at which he acknowledged "the structural white supremacy that suffuses the PCUSA.", and his and Kitty's "selective enforcement of violations of rules."

**27.** Plaintiff lapsed into severe episodes of bulimia nervosa to the point of dangerously low cardiac electrolyte levels. She required two months of outpatient hospitalization in a behavioral mental health facility, and she received intensive physical rehabilitation for her back. She further requires and has received outpatient treatment for depression, anxiety, and severe self-loathing, self-esteem and trauma rehabilitation.

**28.** PCUSA's termination of her because of her protected activity has caused her a loss of income, loss of personal retirement savings, stable housing, affordable health insurance, potential future income, among other valuable financial benefits, as well as severe prolonged, emotional stress, and extended hospitalization for a life-threatening illness (bulimia).

**FIRST CAUSE OF ACTION—TITLE VII and NYSHRL**
**HOSTILE WORK ENVIRONMENT HARASSMENT AGAINST PCUSA**

**29.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**30.** Based on the foregoing facts, Defendant PCUSA violated Title VII, 42 U.S.C. Section 2000e, et seq., and the New York State Human Rights Law, Executive Law §§292-296, by subjecting Plaintiff to hostile work environment harassment because of her gender, race, religion, national origin and the color of her skin.

**31.** By reason and in consequence of Defendant PCUSA's violation of Plaintiff's statutory rights, Plaintiff suffered damages in an amount to be determined upon the trial of this action.

**SECONDCAUSE OF ACTION—NYSHRL**
**HOSTILE WORK ENVIRONMENT RACE-BASED**
**HARASSMENT AGAINST RICK UFFOD-CHASE**

**32.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**33.** Based on the foregoing facts as to the creation of white privilege and people's conversations and groups, Rick Ufford-Chase participated in PCUSA's harassment of Plaintiff by subjecting her to hostile work environment harassment because of her race, national origin and the color of her skin in violation of the New York State Human Rights Law, Executive Law §§292-296.

**34.** By reason and in consequence of Rick Ufford-Chase's violation of Plaintiff's statutory rights, Plaintiff suffered damages in an amount to be determined upon the trial of this action.

**THIRD CAUSE OF ACTION—NYSHRL AIDING AND ABETTING VIOLATIONS AGAINST RICK UFFORD-CHASE**

**35.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**36.** Based on the foregoing facts, Rick Ufford Chase's failure to make a proper and thorough investigation of Ragland's harassment of Plaintiff and failure to take adequate remedial measures to prevent Ragland's harassment of Plaintiff constitutes his actual participation in and aiding and abetting of Ragland's harassment of Plaintiff by subjecting her to hostile work environment harassment because of her gender, race, religion, national origin and the color of her skin in violation of the New York State Human Rights Law, Executive Law §§292-296.

**37.** By reason and in consequence of Rick Ufford-Chase's violation of Plaintiff's statutory rights, Plaintiff suffered damages in an amount to be determined upon the trial of this action.

**FOURTH CAUSE OF ACTION—NYSHRL AIDING AND ABETTING VIOLATIONS AGAINST KITTY UFFORD-CHASE**

**38.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**39.** Based on the foregoing facts, Kitty Ufford Chase's failure to make a proper and thorough investigation of Rick Ufford-Chase's and Ragland's harassment of Plaintiff and failure to take adequate remedial measures to prevent that harassment of Plaintiff constitutes her actual participation in and aiding and abetting of that harassment of Plaintiff by subjecting her to hostile work environment harassment because of her gender, race, religion, national origin and the color of her skin in violation of the New York State Human Rights Law, Executive Law §§292-296.

**40.** By reason and in consequence of Kitty Ufford-Chase's violation of Plaintiff's statutory rights, Plaintiff suffered damages in an amount to be determined upon the trial of this action.

**FIFTH CAUSE OF ACTION—TITLE VII and NYSHRL RETALIATION AGAINST PCUSA**

**41.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**42.** Plaintiff engaged in conduct protected by Title VII, 42, U.S.C. §2000e, et seq., and the New York State Human Rights Law, Executive Law §§292-296, et seq., by complaining about harassment of and discrimination against her.

**43.** By the acts and practices described above, including, but not limited to, taking adverse employment actions, including, but not limited to terminating her, and creating and condoning a hostile work environment, the Defendant PCUSA participated in retaliating against

Plaintiff for her protected activity, in violation of Title VII, 42, U.S.C. §2000e, et seq., and the New York State Human Rights Law, Executive Law §§292-296, et seq.,

**44.** As a result of the Defendant PCUSA's unlawful acts, Plaintiff has suffered irreparable injury, emotional distress and humiliation, mental anguish, stress, and other compensable damage and will continue to do so unless and until this Court grants relief.

**SIXTH CAUSE OF ACTION—NYSHRL**
**RETALIATION AGAINST DEFENDANT RICK and KITTY UFFORD- CHASE**

**45.** Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

**46.** Plaintiff engaged in conduct protected by the New York State Human Rights Law, Executive Law §§292-296, et seq., by complaining about harassment of and discrimination against her.

**47.** By the acts and practices described above, including, but not limited to, taking adverse employment actions, including, but not limited to terminating her, and creating and condoning a hostile work environment, the Defendants Rick and Kitty Ufford-Chase participated in retaliating against Plaintiff for her protected activity, in violation of the New York State Human Rights Law, Executive Law §§292-296, et seq.,

**48.** As a result of the Defendants Rick and Kitty Ufford-Chases' unlawful acts, Plaintiff has suffered irreparable injury, emotional distress and humiliation, mental anguish, stress, and other compensable damage and will continue to do so unless and until this Court grants relief.

**JURY DEMAND**

**49.** Pursuant to Federal Rules of Civil Procedure Rule 38, Plaintiff demands a jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Honorable Court:

(a) award to Plaintiff compensatory damages arising from the Defendants' unlawful, discriminatory and retaliatory conduct, including damages for past and future lost wages and benefits and emotional distress, with pre- and post-judgment interest;

(b) award to Plaintiff punitive or exemplary damages as against Defendants;

(c) award to Plaintiff the reasonable costs and attorneys' fees arising from this action, with post-judgment interest, and

(d) enter any other relief as the court deems equitable and just.

Dated: White Plains, New York
December 10, 2020

Yours, etc.,

MORRISON LAW FIRM, P.C.

By /s/Steven T. Sledzik
STEVEN T. SLEDZIK
*Attorneys for Plaintiff*
445 Hamilton Avenue, Suite 402
White Plains, NY 10601
Phone: (914) 239-3622
Fax:    (914) 750-4028
Email:  ssledzik@morrisonlawfirmpc.com