MORRISON LAW FIRM, P.C.

Daniel W. Morrison
Steven T. Sledzik

*Admitted in New York
and Connecticut*

445 Hamilton Avenue, Suite 402
White Plains, New York 10601
Phone (914) 239-3650
Facsimile (914) 750-4028

Connecticut Office
25 Field Point Road
Greenwich, Connecticut 06830
Phone (203) 244-4041

Maureen Sockett
Janet Crawford
Laura S. Puhala

February 17, 2022

By ECF
The Honorable Philip M. Halpern
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 12-D
New York, NY 10007-1312

Re:   **Alsahlani v. Presbyterian Church, USA, a Corporation, et al, 20-cv-10404 (PMH)**

Dear Judge Halpern:

We represent Plaintiff, Sahar Alsahlani ("Sahar"), in the above-referenced race, religious and national origin discrimination case.   We submit this letter in response to Defendants' request for a conference on a motion for summary judgment.

1.  **Factual Background**

Sahar is a female, light skinned, Arab-American, Shia-Muslim of Iraqi descent. Because of her race and national origin, she identifies as a person of color.  Sahar managed Defendant the Presbyterian Church USA's ("PCUSA") Stony Point Center's ("SPC") gift store. According to the employee handbook, "Multifaith residency at SPC is built on our shared commitment to support a *business* that is dedicated to providing hospitality".   In addition to a $75 a week stipend that she was paid, PCUSA provided her with the substantial financial benefits of housing, meals, access to a vehicle, and health insurance.  Sahar received W-2 notices as to her income *from PCUSA*.

In October 2018, at SPC, PCUSA began the employment of David Ragland ("David"), a dark-skinned, U.S.-born, African American, male, Sunni-Muslim.  He made remarks directed

1

at the color of her skin, her religion and gender. He derogatorily called her "a white girl who passes as a person of color." He referred to her as a "Suzy-Q" (a racial, religious and sexual insult: a lighter skin Muslim female who does not wear a hijab full time; an intellectually incompetent woman who uses her sexuality to manipulate and get ahead professionally, one who wears her hijab when it is convenient or strategic, a prostitute) at a staff meeting attended by SPC's Executive Directors, the Ufford-Chases.  In her workplace, in front of the Executive Directors, with complete immunity, Sahar's co-worker was allowed to call her an epithet questioning the truthfulness and purity of her faith and religious beliefs and affronting her gender and skin color.  Sahar was called racial slurs such as a "Cracker" (a racist, uneducated, white person).  In denying Sahar's request to travel, in emails, David expressed several times "all I see is a white woman getting approved and a black woman being denied," indicating Sahar was receiving perks and favors because of her color.  With absolute immunity, David turned personnel issues into issues of Sahar's skin color and race.

At SPC, there were "white privilege meetings" run by Rick and Kitty Ufford-Chase that were mandatory for people to attend, including Plaintiff.  Plaintiff testified Rick Ufford-Chase said to her "you look white, you are articulate, you are educated" "nobody would think you are an Arab."  She testified Ufford-Chase said the "Black caucus thinks you are white" and that he was being pressured by it; Plaintiff said she did not think it was for him "to decide my race."

In January 2018, during a mandatory staff racial exercise, an employee used the "n-word".  After unfettered backlash, staff began using other racial slurs, "kike" and "gook."  Executive Director Rick Ufford-Chase praised these events, reporting to his supervisor, Diane Moffett, the President and Executive Director of the Presbyterian Ministry Agency of PCUSA: "we are finally getting to the point where the community demonstrates a capacity to hold one another accountable in challenging and intensely personal conversations about race."

2

In bending over backwards in the name of political correctness, PCUSA went to the extreme of creating not a neutral workplace, but one permeated with hostility to Sahar's gender, race, skin color and ethnicity in clear contravention of Title VII.

**Factual Disputes Preclude Summary Judgment**

On summary judgment, the movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008). The facts and inferences must be drawn in a light most favorable to plaintiff. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)**.**   Review of the 56.1 Statement (Dkt No 43-1) demonstrates factual disputes will preclude the motion.

**Sahar's Employment is not Covered by the Ministerial Exception[1]**

Defendants bear the burden of proving that the ministerial exemption to Title VII attaches to them.  *Fratello v. Roman Catholic Archdiocese of N.Y.,* 175 F.Supp.3d 152, 162-3 (S.D.N.Y. 2016).  The Supreme Court held the "ministerial exception" to Title VII has been applied only to "certain key employees" and "those holding certain important positions with churches and other religious organizations."  *Our Lady Guadalupe School v. Morrisey-Berru,* 140 S.Ct. 2049, 2060 (2020).  Relevant factors for consideration of the applicability of this exception are the employee's title and whether it has a religious significance, the employee's educational training and the employee's responsibility to teach religion and participate in religious activities.  *Id*. at 2055.  The Court focused the exception to prevent courts from allowing a wayward minister's preaching, teaching, and counseling which could contradict the church tenets and lead the congregation away from the faith.  *Id*. at 2060.  The Court succinctly stated, "What matters most . . . is what an employee does."  *Id.* at 2064.  Further, the exception

---

[1] In our call with the Court as to this motion, defense counsel stated they would "solely" be moving for summary judgment as to the ministerial exemption (Attachment p. 3, line 2).  But they now are moving on four grounds. The motion should be limited per their representation to the Court.  To avoid prejudice, Plaintiff requests the right

does not necessarily apply to hostile work environment claims.   *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 2021 WL 2206486 * 4 (S.D.N.Y. 2021).

According to its own handbook, SPC is a conference center "built" on the "*business* of hospitality."   Sahar's title was non-denominational, resident "volunteer."   According to her employment agreements, her service was for a gift shop. At the shop, her job was secular, she ordered supplies, supervised staff, and kept the books.   She received a special monthly award for her efforts in that shop, nothing religious.   Her work did not require, nor was she ever given, religious training.   She was not required to take a religious vow or oath.   There were *no* full-time Presbyterian clergy or minister on-site at SPC performing duties; its Chaplain was a Muslim.   Sahar is Muslim and was not offered employment as a member of the Presbyterian faith.   Nothing about her employment was analogous to a minister, bishop, or doctrinal teacher typical to the exception.   Her position did not require doctrinal degrees or education nor involved matters of her employer's faith.   Defendants never proffered a doctrinal based reason for Sahar's termination.   This case's facts demonstrate the exception does not apply.

**Sahar was an Employee of PCUSA**

To prove employment, a plaintiff must establish that she received remuneration for her work, consisting of substantial benefits not merely incidental to the activity performed. *U.S. v. City of N.Y.*, 359 F.3d 83, 91–92 (2d Cir. 2004). Remuneration is broadly defined to encompass any financial benefit such as health insurance. *York v. Assoc. of the Bar of the City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002). "[B]enefits must meet a minimum level of significance or substantiality, in order to find an employment relationship in the absence of more traditional compensation."   *Id.* at pp. 125-6.   Plaintiff received a stipend, health insurance, meals, and housing.   Her work at the gift shop was set and controlled by the Ufford-Chases and other

---

to supplement her Reply to the 56.1 Statement.

PCUSA employees.  Only PCUSA issued her W-2s for eight years.  She was a PCUSA employee as a matter of law and fact.

**Plaintiff Has an Actionable Harassment Claim**

Harassment of Plaintiff occurred at work, *on the grounds of her employer* and by using employee list serves and email addresses.  Ragland and co-workers used racial and religious epithets and remarks to and amongst work colleagues/employees and at staff meetings.  The Ufford-Chases held meetings for staff at their employer provided campus home to discuss White Privilege.

**Plaintiff Has an Adequate Retaliation Claim**

Close temporal proximity between the protected action and the adverse employment action may in itself be sufficient to establish retaliation. *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 552 (2d Cir. 2010).   "The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001). In a July 13, 2019, email to Kitty Ufford-Chase, Sahar said SPC "is not a safe space for me at this time." Sahar called PCUSA's HR on September 24, 2019, to make a complaint of harassment, giving detailed personal information.  The next day, Kitty Ufford Chase texted her clearly indicating Sahar's employment covenant at SPC would be renewed.  Later that same day, the PCUSA HR official who took Sahar's call of complaint (Ruth Gardner) met with the Ufford-Chases. Armed with knowledge of Sahar's complaint, the Ufford-Chase's reversed themselves immediately and Sahar's employment contract was not renewed soon thereafter.

Respectfully submitted,

/s/Steven T. Sledzik

Steven T. Sledzik, Esq.

5

sts

Attachments

cc:     Sahar Alsahlani (by email)

        Mary Smith, Esq. (counsel for Defendants, by ECF)